UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

CARL JACKSON,

    Petitioner,

  vs.

NAPOLI, Superintendent, Southport Correctional Facility,

    Respondent.

Case No. 9:07-CV-0149 (JKS)

APPEARANCES:

CARL JACKSON
90-B-1304
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562
Peititioner, pro se

ANDREW M. CUOMO
Attorney General of the State of New York
120 Broadway
New York, New York 10271

JAMES K. SINGLETON, JR.
Senior United States District Judge

OF COUNSEL:

Alyson J. Gill, Esq.
Thomas B. Litsky, Esq.
Assistant Attorneys General

## MEMORANDUM-DECISION AND ORDER

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2002 prison disciplinary determination, which found Petitioner guilty of possessing contraband, and resulted in a loss of good-time credits. He seeks relief on the ground that he was denied procedural due process in connection with his disciplinary hearing because he was denied: (I) adequate pre-hearing assistance; (II) an opportunity to present certain documents and witnesses; (III) an impartial hearing officer; and (IV) a temporary adjournment for medical reasons. *See* Docket Nos. 1 (Pet.); 8 (Resp.); 7 (Mem.); 10 (Traverse).

## BACKGROUND

On February 7, 2002, while incarcerated in the Auburn Correctional Facility, Petitioner was frisked by Correction Officer ("CO") DiLallo in the presence of Sergeant Kudla and CO Weed.

1

Docket No. 6, Attachs. 4 at 3; 2 at 7-8. During the search, CO DiLallo found a 9" sharpened metal rod in Petitioner's pocket. Docket No. 6, Attach 4 at 3. Petitioner was given a misbehavior report for violating a prison rule prohibiting inmates from possessing contraband that may be classified as a weapon. *Id*.

Correctional Officer Lupo was assigned to assist Petitioner to prepare for a disciplinary hearing regarding the allegations in the misbehavior report. Lupo met with Petitioner, and pursuant to Petitioner's request, interviewed many of the inmates housed near Petitioner's cell on the first level of D Block. Petitioner was provided with a list of the inmates interviewed, along with a note about whether they would be willing to testify. Lupo also provided Petitioner with copies of log book records and other documents, which related to D Block on the date of the search. *See* Docket No. 6, Attach. 3 at 26-27.

A Tier III Disciplinary Hearing was commenced by Hearing Officer Wolczyk on February 11, 2002. Docket No. 6, Attach. 5 at 3. Petitioner's theory was that CO DiLallo planted the contraband on Petitioner as part of a larger conspiracy by correctional staff against African American inmates. Petitioner requested documents and witnesses, which he essentially alleged would show that many other African American inmates had been found with contraband on February 7, 2002. Officer Wolczyk denied Petitioner's requests for documents and witnesses that were not directly related to the first level of D Block where Petitioner was found with the contraband. Wolczyk explained repeatedly that witnesses and documents that could not shed light on what happened in Petitioner's cell on February 7, 2002, were irrelevant. Officer Wolczyk continually gave Petitioner additional opportunities to present relevant documents or witnesses, and gave Petitioner wide latitude to explain how his requests might be relevant to the proceedings.

Five witnesses ultimately testified during the course of the hearing. The first witness, an inmate from cell D-1-19, testified that he had no information about the contraband or the incident. The next witness was Sergeant Kudla, who testified that he received a note from an inmate on D Block that Petitioner had a weapon. Correctional Officer DiLallo testified that he frisked Petitioner under instructions from Sergeant Kudla and found a 9" metal shank in Petitioner's pocket. Docket No. 6, Attach. 4 at 28. DiLallo further testified that he did not plant evidence on Petitioner, and that

he had never had any problems with Petitioner prior to this incident. *Id*. at 29-30. Officer Wolczyk, outside the presence of Petitioner, also took confidential testimony from the prison psychiatrist on Petitioner's mental state and from Sergeant Kudla on the veracity of the confidential informant who tipped Sergeant Kudla to Petitioner's possession of a weapon. *Id*. at 50-51. On February 22, 2002, Officer Wolczyk concluded the hearing and found Petitioner guilty of possessing contraband as charged. *Id*. at 56-57.

On April 22, 2002, Officer Wolczyk's finding of guilt was upheld on administrative appeal, but Petitioner's sentence was reduced to eighteen months loss of good-time credit. *Id*. at 124. Petitioner next filed a challenge to the decision in the Supreme Court, Albany County, under C.P.L.R. Article 78. Docket No. 6, Attach. 1. The Supreme Court denied Petitioner's motion on November 22, 2002. Docket No. 6, Attach. 4. The Appellate Division, Third Department, affirmed the Supreme Court's decision on May 12, 2005. Docket No. 6, Attach. 10. Leave to appeal to the New York Court of Appeals was denied October 25, 2005. Docket No. 5, Attach. 14. Petitioner's current application for a writ of habeas corpus was received February 8, 2007. Docket No. 1.

## LEGAL STANDARD

"Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks the very duration of . . . physical confinement, and thus lies at the core of habeas corpus." *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (internal citations and quotation marks omitted). Accordingly, Petitioner's application for a writ of habeas corpus seeking restoration of good-time credits is proper.

Where the New York State Supreme Court, Appellate Division, has rejected on the merits a petitioner's claims regarding a prison disciplinary hearing, this Court applies the deferential standard under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d); *see also*, *LeBron v. Artus*, 2008 WL 111194 (W.D.N.Y. 2008) (AEDPA deference applies to Appellate Division affirmation of disciplinary hearing findings); *Russell v. Ricks*, 2006 WL 1555468 (N.D.N.Y. 2006) (same); *Encarnacion v. McGinnis*, 2005 WL 3018728 (W.D.N.Y. 2005) (same). A decision is adjudicated "on the merits" when it finally resolves the claim, with res judicata effect, based on substantive rather than procedural grounds. *Sellan v.*

*Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001). This is so, "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Id*. at 312.

Where a federal claim was adjudicated on the merits, AEDPA mandates that a writ of habeas corpus shall not be granted unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"In reviewing habeas petitions, we must presume the state court's findings of fact are correct, unless the petitioner meets the 'burden of rebutting this presumption of correctness by clear and convincing evidence.'" *Lanfranco v. Murray*, 313 F.3d 112, 117 (2d Cir. 2002) (quoting 28 U.S.C. § 2254(e)(1)). The presumption of correctness applies to findings by both state trial and appellate courts. *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id*.

Under AEDPA, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

However, if there is no adjudication on the merits then the pre-AEDPA de novo standard applies. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnel*, 418 U.S. 539, 556 (1974). However, an inmate facing the loss of good-time credits through a disciplinary proceeding must be afforded certain procedures to satisfy due process. *Id.* at 556-57. First, an inmate must be given advance written notice of the charges and a written decision of the factfinder detailing the evidence relied upon and the rationale for any disciplinary action taken. *Id.* at 563-64. An inmate may, within reason, call witnesses and present documentary evidence. *Id.* at 566. While inmates do not have a right to counsel for disciplinary proceedings, where an inmate cannot adequately prepare his own defense because he is illiterate or the charges are exceptionally complex, the state is required to provide him with adequate assistance. *Id.* at 569-70. Lastly, an inmate is entitled to an impartial decision maker. *See id.* at 570-71.

## DISCUSSION

Petitioner makes essentially four claims, all alleging that he was denied procedural due process in the deprivation of his good-time credits. Respondent argues that Petitioner's federal application for habeas relief is untimely and meritless. After a review of the whole record, the Court, for the reasons outlined below, finds that the Appellate Division's rejection of Petitioner's claims on the merits was not an unreasonable application of Federal law. Accordingly, the Court declines to examine Respondent's timeliness argument. *See* 28 U.S.C. 2254(b)(2).

I - <u>Inadequate Assistance</u>

As noted above, the Supreme Court requires the state to furnish an assistant to an inmate who cannot himself adequately prepare his defense because he is illiterate or the charges are exceptionally complex. *Wolff*, 418 U.S. at 569-70. An inmate housed in the SHU must be afforded such an assistant because the inmate is not free to perform the tasks required to marshal evidence for the disciplinary hearing. *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988). An assistant must perform in good faith the tasks which an inmate would perform if he was free to perform them himself, "gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses."

5

*Id*. at 898.  However, an assistant need not go beyond the specific instructions given by the inmate, because to do so would be to act as counsel and not an assistant.  *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993).

Petitioner claims he received inadequate assistance for the preparation of his defense.  Specifically, he alleges CO Lupo gave inadequate assistance because he failed to provide Petitioner with witness statements, and he could not have interviewed all the witnesses on the first level of the D Block because some of the inmates were housed in the SHU on the day Lupo conducted interviews.  Docket No. 1 at 11-12.

The Appellate Division, Third Department, found no merit in Petitioner's contentions:  "The record discloses that the assistant interviewed numerous inmates who petitioner wished to have testify and also retrieved many of the documents that petitioner requested.  At a minimum, petitioner has not demonstrated that his defense was prejudiced by his assistant's alleged inadequacies."  Docket No. 6, Attach. 11 at 3.  This decision was neither "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" nor "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d)(1)-(2).

Officer Lupo interviewed nearly three dozen inmates and identified those who were willing to testify on Petitioner's behalf.  Docket No. 6, Attach. 3 at 27.  He provided Petitioner with all of requested documents relevant to D Block where Petitioner was found with the contraband.  Docket No. 6, Attach. 3 at 69-72.  Nothing more was required.  Petitioner's complaint that he was not provided with witness statements is unavailing.  First, although statements might have been helpful, it was sufficient that he was made aware of the inmates who were willing to testify on his behalf, because that information by itself enabled him to call favorable witnesses at the hearing.  Second, no prejudice can possibly be inferred as none of the inmates identified as willing to testify gave any inculpatory testimony.  *See* Docket No. 1, Attach. 3 at 102.  Petitioner's allegations that CO Lupo lied about interviewing certain inmates because they were housed in the SHU are also unavailing as they are merely conclusory allegations.  *Se*e Docket No. 1 at 11.  Finally, any inadequacy in the assistance provided by CO Lupo was rendered harmless by the patient and thorough work of

6

Hearing Officer Wolczyk who gave Petitioner ample opportunities during the hearing to identify and present further witnesses. *See, e.g.*, Docket No. 6, Attach. 3 at 124-44.

II - <u>Denial of Documents and Witnesses</u>

As noted earlier, a prisoner has a right to call witnesses and present documentary evidence in his defense. *Wolff*, 418 U.S. at 566. When a hearing officer denies an inmate's request to call a certain witness or introduce certain documents, the officer must provide the inmate reasons for the denial. *See Ponte v. Real*, 471 U.S. 491 (1985). It is clearly established that "'a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity.'" *Russell v. Selsky*, 35 F.3d 55, 58 (2d Cir. 1994) (quoting *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)).

Petitioner complains he was denied the right to call witnesses and produce documents of his choosing. Docket No. 1 at 7, 17, 22. Construing his application liberally, Petitioner essentially complains that he was denied documents and witnesses who might have supported his conspiracy theory by showing that other African Americans had been taken to the SHU on February 7, 2002, on allegations of contraband possession. The Appellate Division found this claim baseless as Petitioner was denied only those documents that were irrelevant and witnesses who refused to testify or lacked first-hand knowledge. Docket No. 6, Attach. 11 at 3. The Court has reviewed the hearing transcript and finds that the Appellate Division's decision was neither "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" nor "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1)-(2).

Hearing Officer Wolczyk denied Petitioner's requests to call witnesses who were not located near Petitioner's cell at the time CO DiLallo searched Petitioner. Petitioner was given ample opportunity to explain how each requested witness or document was relevant. Again and again, Petitioner proffered only that the documents and witnesses might establish that a number of African Americans were admitted to the SHU for similar charges on the same date as Petitioner.

This simply would not have established a conspiracy.[1]  As such, Officer Walczyk correctly found this testimony irrelevant and correctly denied Petitioner's requests.

III - <u>Impartial Hearing Officer</u>

As noted earlier, a prison inmate subject to a disciplinary hearing is entitled to an impartial hearing officer.  *Wolff*, 418 U.S. at 570-71.  "[A]n impartial decisionmaker is one who . . . does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990).

Petitioner argues essentially that Officer Wolczyk's decision and evidentiary rulings show that he was biased against Petitioner.  *See* Docket No. 1.  The Appellate Division, Third Department, found that the record did not support the allegation of bias.  Docket No. 6, Attach. 11 at 3.  Having reviewed the entire hearing transcript and already found Officer Wolczyk's evidentiary rulings correct, this Court agrees.  Contrary to Petitioner's allegations, the record demonstrates that Hearing Officer Wolczyk was patient and helpful throughout the proceedings. *See, e.g.*, Docket No. 6, Attach. 3 at 124-44.  His unwavering firmness in excluding irrelevant testimony does not evidence bias.

IV - <u>Denial of Adjournment</u>

Petitioner submits he was denied due process when Hearing Officer Wolczyk denied Petitioner's request for a six-day adjournment on February 21, 2002.  On February 21, 2002, Petitioner requested an adjournment because he had hit his head on the floor and was not feeling well.  Docket No. 6, Attach. 4 at 49.  Although Officer Wolczyk believed Petitioner was faking an injury to try and force a procedural default, he granted an adjournment for twenty-four hours.  *Id*. at 50.  Petitioner continued to complain that he was not feeling well the next day when the proceeding resumed.  *Id*. at 53.  Although Petitioner is correct that Officer Wolczyk did not give a further

---

[1]The Supreme Court has found that mere allegations of a conspiracy are not sufficient to prevent summary judgment, without "'any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).  By analogy, Hearing Officer Wolczyk was not wrong for denying Petitioner's request to call irrelevant witnesses in the hope of finding a conspiracy.

extension, this could not have prejudiced Petitioner. All that remained was to inform Petitioner that his last requested witness had refused to testify and conclude the proceedings. *Id*. Petitioner had made his objections known at every point of the hearing and has not been found to have waived any of the arguments he put forth. As such, Petitioner cannot possibly establish prejudice.

## CONCLUSION

Petitioner's claims are meritless and have been reasonably denied by the Appellate Division. Accordingly, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 must be denied. Further, as reasonable jurists could not disagree that the errors alleged by Petitioner are meritless, the Court declines to issue a Certificate of Appealability ("COA").[2]

Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's application for writ of habeas corpus is DENIED;

2. The Court declines to issue a Certificate of Appealability; and

3. The Clerk shall enter judgment accordingly.

Dated this the 22nd day of April 2008.

/s/ James K. Singleton, Jr.

**JAMES K. SINGLETON, JR.**
United States District Judge

---

[2] A district court may grant a certificate of appealability only if a petitioner makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 482 (2000) (internal quotation marks and citations omitted).